IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD D. SBARRA REVOCABLE TRUST UAD 11/23/1998, DONALD D. SBARRA TTEE; WILLARD LEE FRICKEY TTE U/A DTD 9/8/99; ROBERT E. SCHMIDT; DAVID R. NORCOM; TIM. L. WERTH; ANTHONY A. SCHMIDT; LORETTA SCHMIDT; DANIEL CARNEY; GAYLA W. CARNEY; BKF INVESTMENTS; KEN BRAUN FAMILY, LLC; JEFF COOPER, INC.; ROBERT DWERLKOTTE; SATELLITE RADIO MANAGEMENT, INC.; ALAN MOSKOWITZ; ATK INVESTMENTS, LLC; ICT EXPLORATION, LLC; BRUCE PRINGLE TTEE JOINT REV TRUST UTA 7-25-11; SHELLEY PRINGLE; SIEBER RESOURCES, LLC; PAGE FAMILY TRUST, ROBERT W. PAGE AND KAY PAGE, CO-TTEES; EDWARD C. RITCHIE,<br>                Plaintiffs,<br><br>vs.<br><br>HORIZONTAL EXPLORATION, LLC; MARK A. THOMPSON; MARCELLX LLC; DAVID M. PRUSHNOK; G. DANIEL PRUSHNOK; JOHN P. PRUSHNOK,<br>                Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 14-866<br><br>Chief Magistrate Judge Maureen P. Kelly<br><br>Re: ECF Nos. 14, 15 |

## **OPINION**

**KELLY, Chief Magistrate Judge**

Pending before the Court are two Motion to Dismiss; the first filed on behalf of Defendants Horizontal Explorations, LLC ("Horizontal") and Mark A. Thompson ("Thompson")(ECF No. 14), and the second filed on behalf of Defendants MarcellX

1

("MarcellX"), David M. Prushnok, G. Daniel Prushnok and John P. Prushnok ("the Prushnok Defendants")(ECF No. 15). The Motions to Dismiss are filed pursuant to Rule 12(b)(6) and Rule 9 of the Federal Rules of Civil Procedure, and contend that the facts alleged in Plaintiffs' Complaint are insufficient to state claims upon which relief may be granted.[1]

In their Complaint, Plaintiffs allege claims for fraudulent misrepresentation against Horizontal and Thompson (Count I); civil conspiracy against all Defendants (Count II); violations of Section 10(b) and Rule 10b-5 of the Securities Exchange Act against Horizontal and Thompson (Count III); aiding and abetting a violation of Section 10(b) and Rule 10b-5 against MarcellX and the Prushnok Defendants (Count IV); violations of the Pennsylvania Securities Act against Horizontal and Thompson (Count V); and a state law claim arising under Pennsylvania's Unfair Trade Practice and Consumer Protection Law against Horizontal and Thompson (Count VI).

Plaintiffs' claims arise out of Defendants' alleged misrepresentations and actions taken to defraud them in the course of soliciting substantial investments in an oil and gas well drilling

---

[1] Defendants Horizontal and Thompson have joined in the Motion to Dismiss filed by MarcellX and the Prushnok Defendants, and seek dismissal of all claims against them for failure to plead fraud with sufficient specificity. The Motion to Dismiss was filed without a brief in support or further explanation as to the deficiencies in pleading as to either Horizontal or Thompson. Further, the Motion to Dismiss filed on behalf of Defendants Horizontal and Thompson was submitted to the Court at a time when neither party was represented by counsel. Plaintiffs filed a Motion to Strike the Motion to Dismiss as to Defendant Horizontal, a corporate entity, because it was filed without required legal representation. (ECF No. 23). Subsequently, counsel was retained and entered an appearance on behalf of both Horizontal and Thompson (ECF No. 25). Accordingly, Plaintiff's Motion to Strike the Motion to Dismiss (ECF No. 23) is denied as moot. However, because a brief in support of the Horizontal and Thompson Motion to Dismiss has not been filed in accordance with L.R. 7 of the United States District Court for the Western District of Pennsylvania and Chambers' Practices and Procedures (posted at http://www.pawd.uscourts.gov/pages/courtpractice.htm), Defendants' Horizontal and Thompson's Motion to Dismiss (ECF No. 14) is DENIED.

venture in Western Pennsylvania. MarcellX and the Prushnok Defendants seek dismissal of Counts II and IV against them, contending that the facts alleged in the Complaint are insufficient as a matter of law to state claims for conspiracy or aiding and abetting a securities violations. Horizontal and Thompson seek dismissal of all claims asserted against them because of Plaintiffs' failure to adequately plead fraud.

For the following reasons, the Motion to Dismiss filed by MarcellX and the Prushnok Defendants is granted as to Plaintiffs' claim for conspiracy (Count II), and as to Plaintiffs' claims for "aiding and abetting" securities law violations (Count IV). The Motion to Dismiss filed by Horizontal and Thompson (ECF No. 14) is denied, as noted *supra* at fn. 1.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

For the purposes of the instant Motions, the factual allegations in the Complaint are accepted as true and all reasonable inferences are drawn in Plaintiff's favor. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

Plaintiffs are a group of 22 individuals, family trusts, and businesses located in Kansas, Texas, Ohio and Florida, who were invited to invest in the development of oil and gas wells on a 2,900 acre parcel of land in McKean County, Pennsylvania, identified as the "Swamp Angel Property." Plaintiffs allege that in February 2012, prior to the solicitations to invest, Defendant Thompson entered into discussions with the Prushnok Defendants to acquire certain rights to explore and produce oil and gas on the Swamp Angel Property from its owner, Swamp Angel Energy, LLC. (ECF No. 1. ¶ 35). Prior to entering into discussions for further exploration, approximately 75 wells had been drilled on the property.

In June 2012, the Prushnoks, principal owners of MarcellX, a limited liability company, provided the financing for MarcellX to make the land purchase. After acquiring the land,

MarcellX obtained a bank line of credit to provide the working capital necessary to drill additional wells. The line of credit was used to rework and repair existing wells, pipelines and access roads. However, the line of credit, coupled with profits from existing productive wells, was insufficient to fund additional drilling. Due to this short-fall, Plaintiffs allege the Prushnoks and Thompson, President of Horizontal, developed a "Ponzi-like" investment scheme to fund the capital needed to obtain a return on their investment in the Swamp Angel Property.[2] (ECF 1, ¶ 41).

Plaintiffs allege that Defendant Horizontal prepared a "Confidential Information Memorandum" (the "Memorandum") in August 2012 for distribution to potential investors. The Memorandum described a three-phase drilling schedule of lateral and vertical wells, and represented that permit applications were prepared for all planned initial lateral and vertical wells. Investors in "Fund I" would receive a working interest in each well drilled in the initial phase, with the founders of Horizontal providing up to twenty-five percent of the working capital necessary for the initial phase. Horizontal represented that it had obtained a turnkey price of $178,590 for the completion of each vertical well in the first phase, and that the vertical wells would provide a low cost efficient way to generate cash flow with a high degree of predictability. Horizontal also stated that lateral wells would be on a "cost plus" basis, and estimated that each lateral well would be approximately 2,500 feet long and cost $897,720 to complete. Plaintiff

---

[2] A "Ponzi scheme" is "'[a] fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments.'" Minnesota Lawyers Mut. Ins. Co. v. Mazullo, No. 11-1470, 2012 WL 2343308, at *7 (E.D. Pa. June 20, 2012)(quoting Black's Law Dictionary 1278 (9th ed. 2009)).

does not allege that the Prushnoks or MarcellX were involved in the preparation or distribution of the Memorandum.

From September 2012 through December 2012, Defendant Thompson conducted numerous meetings and telephone calls with Plaintiffs to convince them to participate in Fund I. Thompson represented that he would personally invest up to 25% of the cash necessary to drill the first phase wells, to assure potential investors that he would operate Fund I in their best interests. Plaintiffs allege that based upon Thompson's representations, and the Memorandum authored by Horizontal, they elected to participate in the first phase of the development of the Swamp Angel Property by purchasing membership interests in Fund I. In the aggregate, Plaintiffs contributed approximately $3.35 million dollars to Fund I, and believed that Horizontal had raised at least $6 million dollars, including at least $2 million from Thompson. Again, Plaintiffs do not allege any solicitations to them by or through the Prushnok Defendants or MarcellX.

Plaintiffs contend that after their investments were received, they learned that Thompson never intended to contribute any money to the venture and that he failed to honor his promise to "have skin in the game." Plaintiffs further allege that Thompson failed to disclose that he had selected Larry Dean Winkler ("Winkler") as the Fund I manager, and that Winkler was facing criminal charges for embezzlement from an unrelated oil and gas venture. Plaintiffs allege that the criminal charges filed against Winkler led to a guilty plea for conspiracy, mail fraud and income tax fraud, stemming from the $9 million embezzled from the unrelated venture. Plaintiffs do not allege that the Prushnok Defendants and/or MarcellX participated in the selection of Winkler as the Fund I manager.

Plaintiffs allege that the Memorandum prepared by Horizontal and Thompson misrepresented the phasing of the drilling, such that the first vertical well was drilled in December 2012, followed by drilling two of the more expensive lateral wells in January 2013. Plaintiffs allege that costs associated with the two lateral wells far exceeded representations contained in the Memorandum, and yet, to date, neither well has been completed.

Plaintiffs allege "upon information and belief," that drilling the lateral wells out of order was undertaken to "afford Horizontal the opportunity to pay more money to companies that Thompson and/or the Prushnoks owned," including MarcellX. In particular, by performing services on lateral wells, MarcellX was paid at a higher rate than it would have received for drilling vertical wells under the fixed-price arrangement. (ECF No. 1, ¶¶ 62, 67). Three vertical wells were subsequently drilled in March 2013; however, one was never completed. In all, three vertical wells were completed and are producing oil, two lateral wells and a vertical well have not been completed, and all cash initially invested by Plaintiffs was exhausted by April 2013. Plaintiffs do not allege that MarcellX or the Prushnoks were involved in the order of drilling decisionmaking process.[3]

In May 2013, select Plaintiffs met with Thompson to discuss continued development of the initial phase. Thompson confirmed that Horizontal would drill eight additional vertical wells in the Northeast corner of the Swamp Angel Property, and later advised that Horizontal had begun clearing trees to drill and complete the eight wells. Plaintiffs allege these representations

---

[3] Plaintiffs allege "[c]ontrary to the representations in the Memorandum, *Horizontal* then immediately began drilling the more expensive lateral wells….. Upon information and belief, *Horizontal* immediately began drilling lateral wells because the "cost plus" arrangement for those wells afforded *Horizontal* the opportunity to pay companies that Thompson and the Prushnoks owned (including MarcellX) more money to perform services on the wells than those companies would receive for drilling vertical wells under a fixed-price arrangement." (ECF No. 1, ¶¶ 63, 64)(italics added).

were false, given the depletion of all cash in Fund I, and the lack of funds to drill and complete the eight additional wells.

Plaintiffs allege that in September 2013, Thompson sent each Plaintiff a letter proposing a new scheme, whereby shares in Fund I and the wells represented therein would be rolled into a new investment, identified as Fund II. New investors would be solicited for Fund II to provide cash for an additional forty wells. As proposed, and Fund I investors would obtain interests in each of the Fund II wells. In discussions with Plaintiff Donald D. Sbarra ("Sbarra"), later reduced to a signed letter, Thompson represented that $1.5 million dollars remained in Fund I to "roll" into Fund II. Based upon Thompson's representations, and Sbarra's discussions with other Plaintiffs, Plaintiffs all agreed to "roll the remaining cash into Fund II." (ECF No. 1, ¶ 76).

Plaintiffs allege Thompson failed to disclose that Fund I cash was exhausted, and no money was on hand to "roll" into Fund II. Thus, Thompson began soliciting new investors for Fund II, to provide the cash necessary to fund existing obligations to Plaintiffs. Plaintiffs further allege this was "in reality a Ponzi-like scheme" intended to defraud existing and new investors in Funds I and II. Again, Plaintiffs do not allege facts establishing the involvement of the Prushnoks or MarcellX in soliciting investors for the Fund II scheme.

Plaintiffs allege that the forty wells designated for drilling in Fund II included two specific wells, Well 2-146 and Well 2-147. These wells have been drilled and completed, and are producing a significant amount of oil. However, Plaintiffs learned that Thompson and the Prushnoks, either individually or through MarcellX, reserved the right to drill wells in the area designated for the Fund II/second phase and have excluded Plaintiffs from any royalty payments associated with oil produced from Wells 2-146 and 2-147. Plaintiffs allege that Defendants have converted the profits associated with the two wells for themselves, in contradiction to

7

representations made to Plaintiffs in inducing them to invest in Fund II. Plaintiffs do not allege that the Prushnok Defendants or MarcellX participated in communicating the scope of land or wells designated for Fund II.

Based upon the facts alleged in the Complaint, Plaintiffs seek the rescission of the transactions in which each of them participated in Fund I, a return of their investments, punitive damages and attorneys' fees and costs to the extent permitted by law.

## II.  STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Public Employees' Retirement System v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., citing Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 513 U.S. 662, 678 (2009). See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding

8

that, under Twombly, "labels and conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim"). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

Rule 9(b) of the Federal Rules of Civil Procedure provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The pleadings must be specific enough to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of ... fraud with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." United States ex rel. Streck v. Allergan, Inc., 894 F. Supp.2d 584, 590–91 (E.D. Pa. 2012) (quoting In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 217 (3d Cir. 2002)).

## III. DISCUSSION

### A. Count II – Civil Conspiracy as to the Prushnok Defendants and MarcellX

To establish a civil conspiracy claim pursuant to Pennsylvania law, Plaintiffs must establish: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." Tender Touch Rehab Servs., LLC v. Brighten at Bryn Mawr, No. CIV.A. 11-7016, 26 F. Supp.3d 376, 402 (E.D. Pa. 2014), citing Woodward v. ViroPharma Inc., 3222 EDA 2011, 2013 WL 1485110, at *11 (Pa. Super. Ct. Apr. 3, 2013). "Proof of malice, or an intent to injure, is also an essential part of a cause of action for conspiracy." Montgomery Cnty., Pa. v. MERSCORP, Inc., 904 F. Supp. 2d 436, 453 (E.D. Pa. 2012). "Malice requires proof that the conspirators took unlawful actions with the specific intent to injure the plaintiff, instead of simply furthering their own interests through unlawful means." Id.

Additionally, a plaintiff charging civil conspiracy must "'plead or develop a[ ] separate underlying intentional or criminal act that can support a civil conspiracy claim.'" Accurso v. Infra-Red Servs., Inc., 23 F. Supp.3d 494, 512 (E.D. Pa. 2014) (quoting Goldstein v. Phillip Morris, Inc., 854 A.2d 585, 590 (Pa. Super. Ct. 2004) and McKeeman v. Corestates Bank, 751 A.2d 655, 660 (Pa .Super. Ct. 2000)). A civil conspiracy claim "merely serves to connect the actions of other defendants with the actionable tort of one defendant." Haymond v. Haymond, 2001 WL 74630, at *2 (E.D.Pa. Jan. 29, 2001). Accordingly, once established, all conspirators are jointly and severally liable for the conduct of each of their co-conspirators, because each has agreed to undertake an act together. Byrd v. Aaron's, Inc., 14 F. Supp.3d 667, 681 (W.D. Pa. 2014).

The Prushnok Defendants and MarcellX challenge Plaintiffs' conspiracy claim on the following bases: (1) Plaintiffs fail to allege any facts showing that MarcellX or the Prushnok Defendants committed any overt act in pursuit of an unlawful common purpose; (2) the Complaint fails to allege facts showing that MarcellX or the Prushnok Defendants acted with malice or any intent to injure Plaintiffs; (3) the Complaint fails to allege facts that Plaintiffs suffered damages as a result of any conduct of MarcellX or the Prushnok Defendants; and, (4) the Complaint fails to sufficiently allege fraud and so fails to allege an underlying predicate claim upon which a claim of conspiracy may be sustained. (ECF No. 16). Plaintiffs respond that the Complaint sufficiently alleges a conspiracy against the moving Defendants, relying on their broad allegation that "Defendants developed a Ponzi-like scheme to obtain additional funds from the Investors and divert those funds for their own benefit." (ECF No. 19, p. 17).

With regard to Plaintiffs' conspiracy claim against the Prushnok Defendants and MarcellX, the Complaint alleges:

1. With funds provided from the Prushnoks, MarcellX purchased the right to drill oil and gas wells on the Swamp Angel Property (¶37);

2. MarcellX obtained a bank line of credit to provide working capital (¶ 38);

3. MarcellX used the line of credit to "rework existing wells, repair existing pipelines, and renovate existing access roads (¶ 39);

4. "Thompson and the Prushnoks developed a Ponzi-like scheme to obtain the capital needed to obtain a return on their investment in the Swamp Angel Property." (ECF No. 1, ¶ 41).

11

5. Horizontal retained MarcellX to drill and "perform services" on lateral wells, rather than vertical wells, and paid MarcellX with funds received from Plaintiffs (¶¶ 64, 65);

6. Lateral wells cost more money to drill than vertical wells and so MarcellX was paid more by Horizontal for drilling lateral wells than it would have earned drilling vertical wells (¶ 104);

7. Neither Thompson nor Horizontal (through discussions with Thompson or the investment Memorandum prepared by Horizontal) disclosed to Plaintiffs that Thompson, Horizontal, the Prushnoks or MarcellX retained the right to drill their own wells in the southwestern portion of the Swamp Angel Property, a portion of land represented by Thompson to be part of the Fund II development phase (¶¶ 83-85);

8. Two "lucrative" wells have been drilled on the southwestern portion of the Swamp Angel Property, which Plaintiffs assert is a portion of land represented by Thompson or Horizontal to be designated for Fund II investors, but upon information and belief, the profits have been retained by Thompson, the Prushnoks or MarcellX (¶¶ 87, 105).

With the exception of Plaintiffs' conclusory allegation that "Thompson and the Prushnoks developed a Ponzi-like scheme" (ECF No. 1, ¶ 41), the Complaint fails to allege specific facts sufficient to show that the Prushnok Defendants and/or MarcellX proactively combined with Thompson and Horizontal with an intent to commit an unlawful act. Citing <u>Feliz v. Kintock Group</u>, 297 F. App'x 131, 135-36 (3d Cir. 2008), Defendants argue that the "Ponzi

scheme" allegation is "little more than conclusory allegations of concerted action devoid of facts reflecting joint action." (ECF No. 16, p. 5). The Court agrees.

Plaintiffs' Ponzi-related allegation does no more than recite an element of a cause of action for conspiracy. There are no specific factual allegations to indicate that the Prushnok Defendants or MarcellX communicated with and agreed to perform an unlawful act with Thompson and Horizontal to harm Plaintiffs. Rather, the allegations reveal that MarcellX and the Prushnok Defendants acted in their capacity as oil and gas developers and drilling contractors, and were paid for their work pursuant to a cost-plus contract entered into with Horizontal. To the extent Plaintiffs allege that the Prushnoks and MarcellX are profiting from functional oil wells retained by them in the Southwest corner of the Swamp Angel Property, the Complaint is devoid of any allegations that the Prushnok Defendants and/or MarcellX made any representations to Plaintiffs concerning the scope of land within Fund I or Fund II, or that they participated in the allocation of wells on the property to harm Plaintiffs.

The "mere implication" that the Prushnok Defendants and/or MarcellX were "motivated to maintain [a] business relationship" with Thompson and Horizontal "is insufficient to support an inference that [the moving Defendants] acted solely with malice or intent to injure Plaintiffs." Here, even if there were averments that the Prushnok Defendants and MarcellX acted to injure Plaintiffs, other factual allegations that "[these Defendants] acted to advance [their] own business interests, and not solely to injure [Plaintiffs], negate any alleged intent to injure." Lorah v. SunTrust Mortgage, Inc., No. 08-0703, 2010 WL 5342738, at *5 (E.D. Pa. Dec. 17, 2010)(dismissing civil conspiracy claim arising out of an alleged Ponzi scheme where Plaintiff failed to allege facts supporting an inference that the Defendant affirmatively agreed to inflict injury on Plaintiffs); and see, Car Sense, Inc. v. Am. Special Risk, LLC, No. 13-5661, 2014 WL

13

5431208, at *6 (E.D. Pa. Oct. 27, 2014)(civil conspiracy claim dismissed because plaintiff did not allege facts indicating defendants combined with the intent to do an unlawful act; rather, facts gave rise to reasonable inference that defendant acted in normal business capacity).

As in Lorah and Carsense, the factual allegations contained in the Complaint as to the Prushnok Defendants and MarcellX reveal typical business operations that do not give rise to an inference of a nefarious purpose. The Prushnok Defendants and MarcellX are alleged to have purchased land, secured a business loan, repaired existing roads and wells, and commenced drilling on new wells pursuant to a contract entered into with Horizontal. The Complaint is wholly deficient of any facts (the "who, what, where, when and why") to support the conclusory statement that the moving Defendants affirmatively participated in a scheme to harm Plaintiffs. Accordingly, even accepting the factual allegations in the complaint as true, and making all reasonable inferences in Plaintiffs' favor, the facts allege do not sufficiently allege a civil conspiracy claim against the Prushnok Defendants or MarcellX. Accordingly, the Motion to Dismiss Count II of the Complaint as to the Prushnok Defendants and MarcellX is granted.

**B. Count IV – Liability for Aiding and Abetting a Violation of § 10(b) and Rule 10-5**

Defendants move to dismiss Count IV of the Complaint, which asserts a claim against MarcellX and the Prushnok Defendants for aiding and abetting Horizontal and Thompson in violating Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder.

Section 10(b) of the Securities Exchange Act makes it unlawful for any person to "use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). SEC Rule 10b–5 implements this provision by making it unlawful to, among

14

other things, "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 CFR § 240.10b–5(b). The United States Supreme Court has implied a private cause of action to enforce Section 10(b) and its implementing regulations from the text of the statute. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 318 (2007).

However, the United States Supreme Court has held that it "must give 'narrow dimensions ... to a right of action Congress did not authorize when it first enacted the statute and did not expand when it revisited the law.'" Janus Capital Group, Inc. v. First Derivative Traders, 564 U.S. ___, ___, 131 S. Ct. 2296, 2302 (2011) (quoting Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc., 552 U.S. 148, 167 (2008). In so doing, the Court has expressly and repeatedly rejected private action liability for "aiding and abetting" violations of Section 10(b) and Rule 10b-5. See, Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994) (Rule 10n-5's private right of action does not include suits against aiders and abettors). "Such suits – against entities that contribute 'substantial assistance' to the making of a statement but do not actually make it – may be brought by the SEC, see 15 U.S.C.A. § 78t(e), but not by private parties." Janus Capital Grp., Inc. v. First Derivative Traders, ___ U.S. ___, 131 S. Ct. 2296, 2302 (2011).

Thus, to recover damages for violations of Section 10(b) and Rule 10b–5, a plaintiff must prove "'(1) a material misrepresentation or omission *by the defendant*; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" Halliburton Co. v. Erica P. John Fund, Inc., ___ U.S. ___, 134 S. Ct. 2398, 2407 (2014)(italics

15

added), quoting Amgen Inc. v. Connecticut Retirement Plans and Trust Funds, 568 U.S. ___ , 133 S. Ct. 1184, 1192 (2013) and Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. ___, 131 S. Ct. 1309, 1317–1318 (2011)).

In support of their claim, Plaintiffs allege that "[t]he Prushnoks formed and financed MarcellX, the vehicle which allowed Horizontal and Thompson to commit their [10(b) and 10b-5] violations." ECF No. 1, ¶ 116. Plaintiffs further allege that the Prushnoks and MarcellX "had knowledge" of the violations because MarcellX was "profiting from the work" performed on the Swamp Angel Property. "These profits came directly from ill-gotten investment funds obtained from the Investors." ECF No. 1, ¶ 117. Plaintiffs do not allege that MarcellX and/or the Prushnoks participated in the communication of any material misrepresentations. Rather, the Complaint alleges that *all* misrepresentations were made to Plaintiffs by either Horizontal (through the Memorandum) or by Thompson. Under the facts alleged, in the absence of any alleged participation in communicating the alleged misrepresentations to Plaintiffs, Count IV fails to state a claim against the Prushnok Defendants and/or MarcellX upon which relief may be granted. As such, the Motion to Dismiss Count IV of the Complaint as to the Prushnok Defendants and MarcellX is granted.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed on behalf Horizontal Exploration, LLC and Mark A. Thompson (ECF No. 14) is DENIED. The Motion to Dismiss filed on behalf of David M. Prushnok, G. Daniel Prushnok, John P. Prushnok and MarcellX LLC (ECF No. 15) is GRANTED. An appropriate Order follows.

# **ORDER**

AND NOW, this 16th day of March 2015, upon consideration of the Motion to Dismiss filed on behalf of Horizontal Exploration, LLC and Mark A. Thompson (ECF No. 14), and the Motion to Dismiss filed on behalf of Defendants MarcellX LLC, David M. Prushnok, G. Daniel Prushnok and John P. Prushnok (ECF No. 15), and the briefs filed in support and in opposition thereto, and for the reasons set forth in the accompanying Opinion, IT IS HEREBY ORDERED as follows:

1. The Motion to Dismiss Defendants filed on behalf of Horizontal Exploration, LLC and Mark A. Thompson (ECF No. 14) is DENIED;

2. IT IS FURTHER ORDERED that the Motion to Dismiss Counts II and IV of the Complaint filed on behalf of Defendants MarcellX LLC, David M. Prushnok, G. Daniel Prushnok and John P. Prushnok (ECF No. 15), is GRANTED; and

3. IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike (ECF No. 23) the Motion to Dismiss filed on behalf of Horizontal Exploration, LLC, is DENIED AS MOOT.

4. IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P.

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record by Notice of Electronic Filing