IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD D. SBARRA REVOCABLE TRUST UAD 11/23/1998, DONALD D. SBARRA TTEE; WILLARD LEE FRICKEY TTE U/A DTD 9/8/99; ROBERT E. SCHMIDT; DAVID R. NORCOM; TIM. L. WERTH; ANTHONY A. SCHMIDT; LORETTA SCHMIDT; DANIEL CARNEY; GAYLA W. CARNEY; BKF INVESTMENTS; KEN BRAUN FAMILY, LLC; JEFF COOPER, INC.; ROBERT DWERLKOTTE; SATELLITE RADIO MANAGEMENT, INC.; ALAN MOSKOWITZ; ATK INVESTMENTS, LLC; ICT EXPLORATION, LLC; BRUCE PRINGLE TTEE JOINT REV TRUST UTA 7-25-11; SHELLEY PRINGLE; SIEBER RESOURCES, LLC; PAGE FAMILY TRUST, ROBERT W. PAGE AND KAY PAGE, CO-TTEES; EDWARD C. RITCHIE,<br>      Plaintiffs,<br><br>vs.<br><br>HORIZONTAL EXPLORATION, LLC, MARK A. THOMPSON, MARCELLX, LLC, DAVID M. PRUSHNOK, G. DANIEL PRUSHNOK, JOHN P. PRUSHNOK and BRADLEY A. BROTHERS,<br>      Defendants. | Civil Action No. 14-866<br>Chief Magistrate Judge Maureen P. Kelly<br><br><br><br><br><br><br><br><br><br>Re: ECF Nos. 65 and 68 |

## OPINION AND ORDER

**KELLY, Chief Magistrate Judge**

Pending before the Court are two Motions to Dismiss: one filed by Defendants Horizontal Exploration, LLC, Mark A. Thompson and Bradley A. Brothers ("the Horizontal Defendants"), ECF No. 65, and one filed by Defendants MarcellX, LLC, David M. Prushnok, G.

Daniel Prushnok and John P. Prushnok ("the Prushnok Defendants"), ECF No. 68. The Motions to Dismiss are filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Also before the Court are the respective Briefs in support of the Motions to Dismiss, ECF Nos. 66 and 69, and Plaintiffs' Briefs in opposition to the Motions to Dismiss, ECF Nos. 71 and 73.

For the following reasons, the Motions to Dismiss will be denied.

I.     **FACTUAL ALLEGATIONS**

In the operative Amended Complaint, Plaintiffs raise fourteen claims arising out their investment in an oil and gas well drilling venture in Western Pennsylvania on the basis of the following allegations.

Plaintiffs are a group of 22 individuals, family trusts and businesses, located in Kansas, Texas, Ohio and Florida. ECF No. 56 ¶¶ 1-24. Defendant Horizontal Exploration, LLC ("Horizontal") is a Pennsylvania limited liability company founded by Defendant Mark A. Thompson ("Thompson") and managed by Thompson. Id. ¶¶ 25-26, 33. Defendant Bradley A. Brothers ("Brothers") is the Chief Financial Officer of Horizontal. Id. ¶ 27. Defendant MarcellX, LLC ("MarcellX") is Pennsylvania limited liability company which, during 2012 and 2013, was owned by Thompson and Andray Mining Company. Id. ¶ 28. Andray Mining Company is owned by Defendants David M. Prushnok, G. Daniel Prushnok and John P. Prushnok ("the Prushnoks"). Id. ¶¶ 29-31. In 2012, the Prushnoks became equal partners with Thompson in Horizontal. Id. ¶ 33.

In approximately February, 2012, MarcellX acquired the shallow oil and gas rights to the Swamp Angel Property, a 2900-acre parcel of land on McKean County, Pennsylvania on which approximately 75 wells had been drilled. Id. ¶¶ 44-46. Larry Dean Winckler ("Winckler") was retained to conduct day-to-day operations of the Swamp Angel Property. Id. ¶ 48. Winckler

was, at that time, facing criminal charges relating to his embezzlement from another oil and gas drilling company. Id. ¶ 49.

In May, 2012, Horizontal prepared an initial offering memorandum for the development of the Swamp Angel Property. Id. ¶ 52. In this memorandum, Horizontal represented that its founders and the sponsors of the development (understood by Plaintiffs to include the Prushnoks) would provide $2 million in minimum capital for the program. Id. ¶¶ 53-54.

In August, 2012, Horizontal prepared a revised Confidential Information Memorandum ("the Memorandum"), in which a three-phase development plan was set forth. Id. ¶¶ 54-55. The first phase, to be completed in 2012, was for the drilling of approximately 9 lateral walls and 10 vertical walls at a cost of $10 million. Id. ¶ 55. The Memorandum represented that permit applications were prepared for all planned initial wells. Id. ¶ 56. Investors in "Fund I" would receive a non-operating working interest in each well drilled in the initial phase, with the founders of Horizontal providing up to 25% of the capital necessary to complete development of the first phase. Id. ¶¶ 57-58. Horizontal represented that it had obtained a turnkey price of $178,590 for the completion of each vertical well in the first phase and that that vertical wells would be a low cost efficient way to generate cash flow with a high degree of predictability. Id. ¶ 59. Horizontal also stated that lateral wells would be drilled on a "cost plus" basis and estimated that each lateral well would be approximately 2,500 feet long and cost $897,720 to complete. Id. ¶ 60. Horizontal stated that it would cost Fund I $500 per month to operate each vertical well and $1,500 per month to operate each horizontal well. Id. ¶ 61. Horizontal emphasized the benefits of the access roads existing on the Swamp Angel Property as well as the experience of its management team. Id. ¶¶ 63-64. Thompson, Andrew Welty, Jared Brody and

Andray Mining Company – MarcellX LLC were identified as members of the management team. Id. ¶ 64.

From September through December of 2012, Thompson conducted numerous meetings and telephone calls with Plaintiffs to convince them to participate in Fund I. Id. ¶ 65. Thompson represented to Plaintiffs that he would personally invest cash in Fund I. Id. ¶ 66. Plaintiffs understood that Thompson would provide up to 25% of the cash (possibly exceeding $2 million) necessary to drill the wells in the first phase. Id. ¶ 67.

Plaintiffs purchased partnership interests in Fund I at an aggregate total of $3,350,000. Id. ¶ 70. At the time of their investment, Plaintiffs believed Horizontal had raised at least $6 million in cash. Id. ¶ 71. A partnership agreement ("the Partnership Agreement") was finalized on December 28, 2012. Id. ¶ 73. By letter dated January 1, 2013, Plaintiffs were notified by Thompson that investment in Fund I had closed, having raised more than $6 million in cash. Id. ¶¶ 72, 81.

The total cash invested in Fund I was less than $4 million, none of which came from Thompson's investment of his own cash. Id. ¶¶ 75-76, 82. On December 28, 2012, Fund I transferred $1,528,332 to MarcellX. Id. ¶ 79. On the same date, Thompson transferred $764,166 to Fund I and each of the Prushnoks transferred $254,722 to Fund I, for a total investment from Thompson and the Prushnoks of $1,528,332. Id. ¶ 79. On December 31, 2012, MarcellX submitted an invoice to Fund I for more than $1.35 million based on false representations of amounts owed. Id. ¶ 80. Brothers was aware that this invoice was "bogus," but paid it anyway. Id. ¶¶ 86-87.

Horizontal transferred Plaintiffs' investment funds into a Horizontal account used to pay Horizontal's bills, some of which were not expenses of Fund I. Id. ¶¶ 92-100.

4

Horizontal began drilling the first vertical well for Fund I and then immediately began drilling two lateral wells, in January of 2013. Id. ¶¶ 101-102. Plaintiffs allege "upon information and belief," that drilling the lateral wells out of order was undertaken to afford Horizontal "the opportunity to attempt to justify the bogus expenses for which MarcellX had already been paid in December 2012." Id. ¶ 103. The work on first lateral well, which has never been completed, cost far in excess of the estimate set forth in the Memorandum. Id. ¶ 104. The second lateral well drilled in January 2013 was not been completed. Id. ¶ 105. In March, 2013, Horizontal drilled three additional vertical wells, only two of which were complete. Id. ¶ 106. In all, three vertical wells were completed and are producing oil. Id. ¶ 107. One vertical well and two lateral wells are incomplete. Id. Fund I's cash was depleted by approximately April 2013. Id. ¶ 108.

In May 2013, select Plaintiffs met with Thompson to discuss continued development of the initial phase. Id. ¶ 109. Thompson confirmed that Horizontal would drill eight additional vertical wells on the Swamp Angel property and identified the proposed locations of those wells on a map. Id. In August 2013, Thompson advised certain Plaintiffs that Horizontal was in the process of clearing trees to drill the wells. Id. ¶ 110. In September 2013, Thompson sent a letter to Fund I participants (including Plaintiffs), outlining a proposal that the remaining cash in Fund I be rolled in a separate partnership, Fund II, in which the Fund I participants would receive interest in 40 wells to be drilled in the second phase of development of the Swamp Angel Property. Id. ¶¶ 112-113. In discussions about the Fund II proposal with Plaintiff Donald D. Sbarra ("Sbarra"), later reduced to a signed letter dated October 1, 2013, Thompson represented that $1.5 million remained in Fund I. Id. ¶ 114. Sbarra communicated to the other Plaintiffs,

who agreed to roll the remaining case into Fund II as set forth in the October 1, 2013, letter. Id. ¶ 115.

As part of Fund II, Horizontal developed two specific wells, Well 2-146 and Well 2-147, and represented that these wells belonged to Fund II participants. Id. ¶¶ 119, 121. These wells are producing oil, but Plaintiffs have never received royalty payments for the production from these wells. Id. ¶¶ 120, 122. In January 2014, Horizontal transferred these wells to MarcellX. Id. ¶ 123. Additionally, Thompson, the Prushnoks, or MarcellX have drilled at least two vertical wells in the same portion of the Swamp Angel Property designated for Fund II development. Id. ¶ 127.

## II. STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Employees' Retirement System v. The Chubb Corp., 39 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its

6

face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim"). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## III. DISCUSSION

### A. Motion to Dismiss of the Horizontal Defendants

#### 1. Counts I, II, VII, IX(A)[1] and X: Application of the Gist-of-the-Action Doctrine

The Horizontal Defendants first argue that Counts I, II, VII, IX(A) and X arise from the business relationship governed by the Partnership Agreement and thus are barred by the gist-of-the-action doctrine as improper attempts to restate contract claims as tort claims. ECF No. 66 at 5-7. The applicable legal principles are as follows:

> The gist of the action doctrine is a theory under common law "designed to maintain the conceptual distinction between breach of contract claims and tort claims." The doctrine is policy-based, arising out of the concern that tort recovery should not be permitted for contractual breaches. Thus, while the existence of a contractual relationship between two parties does not prevent one party from bringing a tort claim against another, the gist of the

---

[1] Plaintiffs have mistakenly numbered two of their counts as Count IX. The Court will refer to the first Count IX (Conversion of Wells 2-146 and 2-147) as Count IX(A) and the second (Unjust Enrichment – Wells 2-146 and 2-147) as Count IX(B).

7

> action doctrine precludes tort suits for the mere breach of contractual duties unless the plaintiff can point to separate or independent events giving rise to the tort. Generally, courts apply the gist of the action doctrine when the claims are (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contact claim or the success of which is wholly dependent on the terms of a contract.

Addie v. Kjaer, 737 F.3d 854, 865-66 (3d Cir. 2013) (citations omitted).

"The focus of an analysis under the 'gist of the action' doctrine is whether 'actions lie from a breach of the duties imposed as a matter of social policy' or 'from the breach of duties imposed by mutual consensus.'" Toledo Mack Sales & Serv. v. Mack Trucks, Inc., 530 F.3d 204, 229 (3d Cir. 2008) (citation omitted).

### a. Count I: Fraudulent Misrepresentation

Count I is a claim for fraudulent misrepresentation, brought against Horizontal, Thompson and the Prushnoks and based on the alleged misrepresentations concerning: (1) the investment of cash in Fund I by Horizontal's owners; (2) the failure to disclose the intention of Thompson, the Prushnoks and MarcellX to drill their own wells in the same areas of the Swamp Angel Property; (3) the failure to disclose the intention of Horizontal and Thompson to utilize Winckler to manage Fund I; and (4) the formation of Fund II, the rollover of money from Fund I to Fund II and the 40 permitted wells for Fund II. ECF No. 56 ¶¶ 128-140.

Plaintiffs summarize this claim as one of fraud in the inducement, to which, Plaintiffs claim, the gist of the action doctrine is inapplicable. ECF No. 71 at 8.[2] The law is not clear that fraud in the inducement claims are categorically barred under the gist of the action doctrine. See

---

[2] Plaintiffs also argue that Thompson and Brothers are not parties to the Partnership Agreement and therefore cannot invoke the gist of the action doctrine. This argument is not dispositive. The United States Court of Appeals for the Third Circuit has explained that tort claims against corporate officers may be barred where the allegedly tortious acts arose in the course of the contractual relationship between the plaintiff and the corporate officers' company. Addie v. Kjaer, 737 F.3d 854, 868 (3d Cir. 2013) (citing eToll, Inc. v. Elias/Savion Adver., 811 A.2d 10, 12, 20-21 (Pa. Super. 2002)).

Downs v. Andrews, 2016 WL 519162, *3 (3d Cir. 2016) (citing, *inter alia*, Vives v. Rodriguez, 849 F.Supp.2d 507, 518-20 (E.D. Pa. 2012)). However, the law is clear that if the precontractual statements that form the basis for the fraud in the inducement claim concern duties of the parties set forth in the eventual contract, the claim may be dismissed under the gist of the action doctrine. Downs, 2016 WL 519162 at *3.

At this stage of the litigation, it appears that Plaintiffs have made sufficient factual allegations as to misrepresentations of the Horizontal Defendants which lie from a breach of the duties imposed as a matter of social policy and not a breach of contractual duties such that Count I is not at this point barred by the gist of the action doctrine.

### b. Counts VII, IX(A) and X: Conversion

The Horizontal Defendants assert that Plaintiffs' conversion claims "are barred by the gist of the action doctrine because they arise from the same facts that support Plaintiffs' breach of contract claim." ECF No. 66 at 7.

Briefly, Count VII (against Thompson, the Prushnoks and MarcellX) concerns conversion of the $1,528,332 that Plaintiffs invested in Fund I; Count IX(A) (against Thompson, David Prushnok and MarcellX) concerns the conversion of Wells 2-146 and 2-147; and Count X (against Horizontal, Thompson, the Prushnoks and Brothers) concerns comingling of Fund I money with Horizontal's money. ECF No. 56 ¶¶ 182-188; 197-201; 208-213. Plaintiffs' breach of contract claim, Count X (against Horizontal, Thompson, the Prushnoks and Brothers) concerns the conversion and comingling of Plaintiffs' Fund I investment. At first glance, it is apparent that the factual basis for Count IX(A) is not the same as the basis for Count X.

Further, as this Court has recently explained:

> A certain tension exists, at the motion to dismiss stage, between
> Pennsylvania's "gist of the action" doctrine and Rules 8(d)(2) and (3) of the

9

> Federal Rules of Civil Procedure, which expressly condone pleading in the alternative . . .. District courts in Pennsylvania have noted that caution should be exercised in determining the "gist of an action" at the motion to dismiss stage.

Rhodes v. Avis Budget Car Rental, LLC, 2016 WL 1435443, *5 (W.D. Pa. April 12, 2016) (citations omitted).

Accordingly, Plaintiffs' use of the same factual allegations to support different claims is not determinative of the true nature of the claims. In any event, the Court finds that at this stage, Plaintiffs have made sufficient allegations that the conversions of property in which Plaintiffs had an interest were a breach of the duties imposed as a matter of social policy rather than a breach of a contractual duty. Therefore, Counts VII, IX(A) and X are not at this point barred by the gist of the action doctrine.[3]

The Horizontal Defendants' Motion to Dismiss on this basis will be denied.

### 2. Count I: Fraudulent Misrepresentation

The Horizontal Defendants also move to dismiss Count I on two additional bases: (1) failure forward-looking statements are not fraudulent; and (2) claim is barred by the parol evidence rule.

#### a. Forward-looking Statements

The Horizontal Defendants assert that Plaintiffs' fraudulent misrepresentation claim fails because the alleged misrepresentations concern promises of future of performance. ECF No. 68 at 8-9. While a cause of action for fraud must allege misrepresentation of a past or present material fact, a "statement of present intention which is false when uttered may constitute a fraudulent misrepresentation of fact." Mellon Bank Corp. v. First Union Real Estate Equity &

---

[3] The Horizontal Defendants briefly allude to Count II, a civil conspiracy claim against all Defendants, in their gist of the action argument. As Plaintiffs' tort claims underlying this conspiracy claim have been permitted to proceed, so will Count II.

10

Mortg. Invs., 951 F.2d 1399 (3d Cir. 1991) (citations omitted). In this case, an examination of the allegations that make up Count I reveals that the Horizontal Defendants' characterization thereof is false. Plaintiffs allege, for instance, "At the time that they made the representation, Horizontal, Thompson, and the Prushnoks knew that they had no intention to make any significant cash investment in Fund I." ECF No. 56 ¶ 131. This allegation clearly describes a statement of present intention which was false when uttered. Accordingly, the Horizontal Defendants' Motion to Dismiss Count I on this basis will be denied.

### b. Parol Evidence Rule

The Horizontal Defendants additionally assert that Count I fails because the allegations therein amount to fraud in the inducement which is barred by the parol evidence rule because the Partnership Agreement was an integrated agreement. ECF No. 66 at 10-12.

The Pennsylvania Supreme Court has explained the parol evidence rule as follows:

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.
>
> Therefore, for the parol evidence rule to apply, there must be a writing that represents the "entire contract between the parties." To determine whether or not a writing is the parties' entire contract, the writing must be looked at and "if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement, it is conclusively presumed that [the writing represents] the whole engagement of the parties . . . ." An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution.

> Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract. One exception to this general rule is that parol evidence may be introduced to vary a writing meant to be the parties' entire contract where a party avers that a term was omitted from the contract because of fraud, accident, or mistake.

Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004) (citations omitted).

Plaintiffs argue that the Partnership Agreement does not represent their contract to invest in Fund I. ECF No. 71 at 16. Rather, Plaintiffs assert, basis for their fraud claims is subscription agreements they entered into in the summer/fall of 2012 which obligated them to invest in Fund I. Id. Thus, Plaintiffs continue, the integration of the Partnership Agreement is irrelevant. Id. At this stage of the litigation, Plaintiffs' assertion is sufficient to defeat the Horizontal Defendants' challenge to Plaintiffs' claim. Accordingly, the Motion to Dismiss Count I on this basis will be denied.

### 3. Count III: Violation of Section 10(b) and Rule 10b-5

Plaintiffs bring Count III, for Securities Exchange Act related violations, against Horizontal, Thompson and the Prushnoks. ECF No. 56 ¶¶ 149-154. This cause of action has six required elements: (1) a material misrepresentation (or omission); (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) a causal connection between the material misrepresentation and the loss. McCabe v. Ernst & Young, LLP, 494 F.3d 418, 424 (3d Cir. 2007) (citation omitted).

The Horizontal Defendants assert that Plaintiffs have failed to allege the element of reliance. ECF No. 66 at 13. For this argument, the Horizontal Defendants rely on the same argument as above, that the integrated Partnership Agreement prohibits Plaintiffs from relying on statements made prior to entering into the agreement. Id. Plaintiffs rely on their response to the

argument above in response to this argument. ECF No. 71 at 18. For the reasons set forth above, the Horizontal Defendants' Motion to Dismiss on this basis will be denied.

### 4. Count IV: Aiding and Abetting a Violation of Section 10(b) and Rule 10b-5

Plaintiffs bring Count IV, for aiding and abetting Securities Exchange Act-related violations, against MarcellX, the Prushnoks and Brothers. ECF No. 56 ¶¶ 155-162. The Horizontal Defendants argue that there was no violation of Section 10(b) or Rule 10b-5. ECF No. 66 at 14. This argument relies on the success of the preceding argument, which was not successful. The Horizontal Defendants' Motion to Dismiss on this basis will be denied.

### 5. Count V: Violation of the Pennsylvania Securities Act

Plaintiff brings Count V, for violation of the Pennsylvania Securities Act, against Horizontal, Thompson and the Prushnoks. ECF No. 56 ¶¶ 163-172. For this argument, the Horizontal Defendants again rely on the "integrated Partnership Agreement" argument. ECF No. 66 at 15. Plaintiffs again rely on their response to the argument above. ECF No. 71 at 18. For the reasons set forth above, the Horizontal Defendants' Motion to Dismiss on this basis will be denied.

### 6. Count VI: Unfair Trade Practices and Consumer Protection Law

In Count VI, Plaintiffs allege violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("the UTPCPL"), 73 P.S. § 201-1 *et seq.*, against Horizontal, Thompson and the Prushnoks. ECF No. 56 ¶¶ 173-181. The UTPCPL allows "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes" to bring a private action for losses suffered through use of acts or practices which are unlawful under the UTPCPL. 73 P.S. § 201-9.2. The Horizontal Defendants argue that the UTPCPL does

not apply to this case because: (1) Plaintiffs are not residents of Pennsylvania; and (2) the UTPCPL does not apply to securities or investments. ECF No. 66 at 15-17.

### a. Non-resident of Pennsylvania

To support their first argument, the Horizontal Defendants cite to a single district court case, Stone St. Services, Inc. v. Daniels, 2000 WL 1909373 (E.D. Pa. Dec. 29, 2000), which does not hold that the UTPCPL cannot apply to non-residents of Pennsylvania. Plaintiffs cite to a more recent case from this Court, Haggart v. Endogastric Solutions, Inc., 2011 WL 466684, *7 (W.D. Pa. Feb. 4, 2011), which found no such blanket rule exists and permitted UTPCPL claims brought by a non-resident of Pennsylvania to survive a motion to dismiss on the basis asserted herein.

This Court finds sufficient Pennsylvania connections in order to permit this claim to survive at this stage of the litigation. Accordingly, the Motion to Dismiss Count VI on this basis will be denied.

### b. Securities/Investments

The Horizontal Defendants next argue that Plaintiffs' investments are not covered by the UTPCPL because they do not qualify as goods or services. ECF No. 66 at 16-17. In support of their argument, the Horizontal Defendants cite to Algrant v. Evergreen Valley Nurseries Ltd. P'ship, 941 F. Supp. 495 (E.D. Pa. 1996). That case was appealed to the United States Court of Appeals for the Third Circuit, wherein the Court explained that cases in which the purchase of securities is at issue, not the securities themselves, fall within the protections of the UTPCPL because they involve the provision of services. Algrant v. Evergreen Valley Nurseries Ltd. P'Ship, 126 F.3d 178, 187-88 (3d Cir. 1997). In Murphy v. Mid East Oil Co., 2007 WL 527715

(W.D. Pa. February 14, 2007), this Court applied the Third Circuit's holding in Algrant to determine whether an investment fell within the purview of the UTPCPL, finding:

> Algrant teaches that investment securities are not goods for purposes of the UTPCPL, and that the sale of investment securities does not fall within its reach if the plaintiffs allege fraud in the securities themselves. Id. However, the Court in Algrant acknowledged that where a plaintiff alleges fraud in the actual sale of securities purchased, such as in receiving inaccurate information or fraudulent assurances concerning the securities (so as to constitute fraud in the transaction, or for services provided), it may state a claim under the UTPCPL. Id. at 187-188, citing S. Kane & Son Profit Sharing Trust v. Marine Midland Bank, 1996 WL 200603 (E.D. Pa. Apr. 25, 1996); Advest Inc. v. Kirschner, 1994 WL 18592 (E.D. Pa. Jan. 21, 1994); Denison v. Kelly, 759 F. Supp. 199 (M.D. Pa. 1991); McCullough v. Shearson Lehman Bros., Inc., 1998 WL 23008 (W.D. Pa. Feb. 18, 1988).
>
> Here, the plaintiffs allege that [a defendant] induced them to invest in the limited partnerships by falsely representing their profit recovery. They also contend that [defendants] made false or misleading representations in the letter agreement, which induced them to remain participants in the [limited partnerships] instead of recouping their investments. Since these claims may be construed as constituting fraud in the transaction or for services provided, [the UTPCPL violation claim] should not be dismissed.

Murphy, 2007 WL 527715 at *8 (record citations omitted).

As was the case in Murphy, Plaintiffs' claims in the instant action may be construed as constituting fraud in the transaction or for services provided. Accordingly, the Horizontal Defendants' Motion to Dismiss on this basis will be denied.

### 7. Counts VIII, IX(B) and XI: Unjust Enrichment

The Horizontal Defendants next argue that Plaintiffs cannot pursue unjust enrichment claims against them because the relationship between the parties is contractually based. ECF No. 66 at 18-19. The Horizon Defendants cite to, *inter alia*, Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006), for the principle that "the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract." ECF No. 66 at 18. Plaintiffs characterize the application of this legal

principle to this case, "misguided." ECF No. 71 at 22. Plaintiffs first point out that neither Thompson nor Brothers are parties to any relevant contract. Id. Plaintiffs further argue that their claim of fraud in the inducement permits their unjust enrichment claims. Id.

The Court is unable review the Horizontal Defendants' argument. Despite basing their argument on the relationship between the "parties" and "an express contract," later identified as two contracts: the subscription agreement and the Partnership Agreement, ECF No. 66 at 18, 19, and despite the varying defendants for the three claims involved,[4] the Horizontal Defendants' argument fails to identify any party to either contract or connect any party to a relevant claim. In light of this underdeveloped argument, the Court cannot say that Plaintiffs have failed to make a plausible claim for relief. Accordingly, the Horizontal Defendants' Motion to Dismiss on this basis will be denied.

### 8. Counts VII, IX(A) and X: Conversion

The Horizontal Defendants argue that Plaintiffs cannot maintain claims for conversion of funds that they voluntarily invested, citing a definition of conversion which specifies that a lack of consent to possession of the converted property is a required element. ECF No. 66 at 19-20 (citing Chrysler Credit Corp. v. Smith, 643 A.2d 1098, 1100 (Pa. Super. Ct. 1994)). In response, Plaintiffs cite to Cenna v. United States, 402 F.2d 168, 170-71 (3d Cir. 1996),[5] which provides a more expansive definition of conversion under Pennsylvania law:

> A deliberate taking of another's personal property without consent is the strongest and clearest case of conversion. But the deliberate taking of another's personal property with the consent of that person to use it for one purpose, but with the intent of using it for another in conflict with that person's interest is also conversion.

---

[4] Counts VIII and IX(B) are raised against Thompson, the Prushnoks and MarcellX; Count XI is raised against Horizontal, Thompson and the Prushnoks. ECF No. 56 ¶¶ 189-196, 202-207, 214-219.
[5] ECF No. 71 at 23.

16

Plaintiffs also cite to law concerning the nullification of consent via fraud. ECF No. 71 at 23 (citations omitted).

At this stage of the litigation, the Court cannot say that Plaintiffs cannot establish plausible claims for conversion under the legal theories they advance. Accordingly, the Horizontal Defendants' Motion to Dismiss on this basis will be denied.

### 9. Count XII: Breach of Fiduciary Duty

The Horizontal Defendants argue that this claim, which was brought against Horizontal, Thompson, the Prushnoks and Brothers, should be dismissed against Thompson and Brothers because Plaintiffs have no fiduciary relationship with Thompson or Brothers. ECF No. 66 at 20-22. In response, Plaintiffs observe that the Horizontal Defendants do not deny a fiduciary relationship between Plaintiffs and Horizontal and allege that Thompson and Brothers, as officers of Horizontal, can be liable for breaching Horizontal's fiduciary duties. ECF No. 71 at 24-25.

At this stage of the litigation, the Court cannot say that Plaintiffs cannot establish plausible claims against Thompson and Brothers for breach of fiduciary duty under the theory they advance. Accordingly, the Horizontal Defendants' Motion to Dismiss on this basis will be denied.

### B. Motion to Dismiss of the Prushnok Defendants

In support of their Motion to Dismiss, ECF No. 68, the Prushnok Defendants filed a Brief, ECF No. 69, which is divided into two sections.

The first section merely incorporates the Horizontal Defendants' Motion to Dismiss and Brief in support thereof. Id. at 1-4. To that extent, the Court incorporates its analysis of the

Horizontal Defendants' Motion to Dismiss and Brief in support thereof. Accordingly, on those bases, the Prushnok Defendants' Motion to Dismiss will be denied.

In the second section, id. at 4-7, the Prushnok Defendants seek dismissal of Plaintiffs' claims for the reasons set forth in the documents supporting their August 29, 2014, Motion to Dismiss, ECF No. 15, and this Court's March 16, 20165, Opinion and Order granting that Motion, ECF No. 28. The earlier Motion to Dismiss and this Court's Opinion and Order concerned Plaintiffs' 22-page original Complaint, ECF No. 1. Because Plaintiffs have filed a 40-page Amended Complaint, ECF No. 56, both the original Complaint and any argument based thereupon is moot. Accordingly, on those bases, the Prushnok Defendants' Motion to Dismiss will be denied.

## ORDER

AND NOW, this 15th day of June, 2016, IT IS HEREBY ORDERED that the Motion to Dismiss filed by Horizontal Exploration, LLC , Mark A. Thompson and Bradley A. Brothers, ECF No. 65, is DENIED. IT IS FURTHER ORDERED that the Motion to Dismiss filed by MarcellX, LLC, David M. Prushnok, G. Daniel Prushnok and John P. Prushnok, ECF No. 68, is DENIED.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM-ECF